# In the United States Court of Federal Claims

No. 22-755
(Filed Under Seal: January 27, 2023)
(Reissued for Publication: February 15, 2023)[1]

```
**************************************
THALLE/NICHOLSON JOINT            *
VENTURE,                          *
                                  *
            Plaintiff,            *
                                  *
      v.                          *         Post-Award Bid Protest; Motion
                                  *         to Dismiss; Motion for Judgment
THE UNITED STATES,                *         on the Administrative Record;
                                  *         Standing; Plain Language; FAR
            Defendant,            *         52.204-7(b)(1).
                                  *
      and                         *
                                  *
SHIMMICK CONSTRUCTION             *
  COMPANY, INC.,                  *
                                  *
            Defendant-Intervenor. *
**************************************
```

*Jacob W. Scott*, Smith Currie & Hancock LLP, Washington, DC, counsel for Plaintiff. With whom were *Lochlin B. Samples* and *Shoshana E. Rothman*, of counsel.

*Brendan Jordan*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Jennifer Dorsey*, Assistant District Counsel, U.S. Army Corps of Engineers, of counsel.

*Giovanni M. Ruscitti*, Berg Hill Greenleaf Ruscitti, LLP, Boulder, CO, counsel for Defendant-Intervenor. With whom was *Benjamin F. Silfen*, of counsel.

## OPINION AND ORDER

**Dietz, Judge.**

Thalle/Nicholson Joint Venture ("Thalle/Nicholson") protests a decision by the United States Army Corps of Engineers ("USACE") to award a construction contract to Shimmick

---

[1] This Opinion and Order was filed under seal on October 25, 2022, *see* [ECF 51], in accordance with the Protective Order entered on July 18, 2022, *see* [ECF 13]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on February 10, 2023, with an agreed upon proposed redaction. [ECF 53]. The Court accepts the parties' proposed redaction. The redaction is indicated by bracket asterisks, *e.g.*, "[* * *]."

Construction Company, Inc. ("Shimmick"). Thalle/Nicholson challenges a determination by USACE that its proposal was ineligible for award due to Thalle/Nicholson's failure to register in the System for Award Management ("SAM") as arbitrary, capricious, an abuse of discretion, and not in accordance with procurement law. The government moves the Court to dismiss Thalle/Nicholson's protest for lack of standing pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), arguing that Thalle/Nicholson's proposal was incurably deficient. Alternatively, the government moves the Court to enter judgment on the administrative record in its favor on the grounds that USACE rationally eliminated Thalle/Nicholson's proposal from consideration for award.

The Court finds that Thalle/Nicholson has standing to challenge USACE's determination that its proposal was ineligible for award. However, the Court also finds that USACE had a rational basis for its determination that Thalle/Nicholson's proposal was ineligible for award because Thalle/Nicholson was not registered in SAM as required by Federal Acquisition Regulation ("FAR") 52.204-7.[2] Accordingly, the government's motion to dismiss is **DENIED**, the government's and Shimmick's motions for judgment on the administrative record are **GRANTED**, and Thalle/Nicholson's motion for judgment on the administrative record is **DENIED**.

I.   **BACKGROUND**

   A.   **Overview of Solicitation**

On August 19, 2021, USACE issued a solicitation for the repair and modification of a spillway at the Lewisville Dam in Denton County, Texas. AR 1, 102, 162.[3] The solicitation called for an unrestricted competition which would result in the award of a firm-fixed-price construction contract with an estimated cost of "$63M including escalation and contingencies." AR 103, 162. The solicitation listed five non-price evaluation factors: Technical Approach (Factor I), Specialized Experience (Factor II), Management Approach (Factor III), Past Performance (Factor IV), and Small Business Participation (Factor V). AR 806. Price would also be evaluated. *Id*. Factors I-III were to be assigned an adjectival rating of Outstanding, Good, Acceptable, Marginal, or Unacceptable. AR 825. Factor IV would be assigned a performance confidence rating of Substantial Confidence, Satisfactory Confidence, Limited Confidence, No Confidence, or Unknown Confidence (Neutral). *Id*. Factor V would be assigned an evaluation rating of Outstanding, Good, Acceptable, Marginal, or Unacceptable. *Id*. The solicitation stated that the "[a]ward will be made using the best value tradeoff procedures under FAR Part 15." AR 103. The solicitation further stated that USACE intended to award the contract without discussions but reserved the right to establish "a competitive range of all the most highly rated proposals" and to open discussions. AR 808.

The solicitation required offerors "to meet all solicitation requirements, including terms and conditions, representations and certifications, and technical requirements, in addition to

---

[2] The FAR is located at 48 C.F.R. ch. 1.

[3] The Court cites to the Administrative Record filed by the government at [ECFs 22-30, 45-1] as "AR ___."

2

those identified as evaluation factors." AR 169. It further stated that proposals "must meet the criteria stated in the RFP in order to be eligible for award, to include responsiveness, technical acceptability and responsibility." AR 808. Pertinent to the instant protest, the solicitation incorporated by reference FAR 52.204-7 System for Award Management (OCT 2018), AR 172, which provides:

> An Offeror is required to be registered in SAM *when submitting an offer or quotation*, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation.

FAR 52.204.7(b)(1) (emphasis added). With respect to joint venture offerors, the solicitation stated:

> When proposing as a joint venture, all members of the joint venture shall sign the SF 1442 and the bid bond unless a written agreement by the joint venture is furnished with the proposal designating one firm with the authority to bind the other member(s) of the joint venture. In addition, a copy of the joint venture agreement shall be submitted with the proposal. Failure to comply with the foregoing requirements may eliminate the proposal from further consideration.

AR 171. The solicitation warned that "[f]ailure to meet a requirement may result in an offer being ineligible for award." AR 169. However, the solicitation also incorporated by reference FAR 52.215-1 Instructions to Offerors – Competitive Acquisition (JAN 2017), which provides that "[t]he Government may waive informalities and minor irregularities in proposals received." AR 172.

### B. The Proposals, Evaluation, and Award Decision

Thalle/Nicholson submitted its proposal on November 3, 2021. AR 1808, 2033. Thalle/Nicholson's proposal identified "Thalle-Nicholson Joint Venture" as the offeror. AR 5952. The proposal was signed by representatives of Thalle Construction Co., Inc. and Nicholson Construction Co., the two entities comprising the joint venture, AR 2037-38, and it included a copy of the joint venture agreement, AR 1933-47. With respect to SAM registration, the proposal stated that "[e]ach JV member has completed representations and certifications in SAM," AR 2071, and included individual proof of SAM registration for Thalle Construction Co., Inc. and Nicholson Construction Co., *see* AR 2092-2096.

USACE received proposals from Thalle/Nicholson, Shimmick, and Kiewit Infrastructure South Co. ("Kiewit"). AR 1285-2110. Initially, USACE found all three proposals unacceptable. AR 2123, 2137, 2152. In its consensus evaluation worksheet, USACE described deficiencies as "all areas where the contractor fails to meet minimum requirements of the solicitation." AR 2140. With respect to Thalle/Nicholson's proposal, USACE identified deficiencies in relation to

3

several non-price evaluation factors. AR 2140-41, 2145, 2148, 2150-51. None of the deficiencies identified in USACE's initial evaluation concerned SAM registration. *See id.*

On December 1, 2021, USACE issued Evaluation Notices to all three offerors. AR 2153, AR 2166, AR 2179. In the notice provided to Thalle/Nicholson, USACE stated that "[w]e are now in discussions[,]" and informed Thalle/Nicholson of the deficiencies identified in the initial evaluation report. AR 2181-91. Once more, USACE did not mention any deficiencies related to SAM registration. *See id.* The Evaluation Notice provided an opportunity for Thalle/Nicholson "to review and revise [its] technical proposal and [its] price proposal if [it] believes it is necessary[.]" AR 2179. Thalle/Nicholson submitted a response to the Evaluation Notice on December 22, 2021. AR 3565.

USACE issued a second Evaluation Notice to Thalle/Nicholson on January 19, 2022. AR 4261. The notice advised that "[w]e are still in discussions" and noted several deficiencies with Thalle/Nicholson's revised proposal. AR 4261-72. Again, none of the deficiencies related to SAM registration. *See id.* Thalle/Nicholson submitted its response to the second Evaluation Notice on January 31, 2022. *See* AR 5487-98. Shortly thereafter, USACE advised Thalle/Nicholson that a meeting was needed to obtain "further clarifications." *See* AR 5803. None of the clarifications sought related to SAM registration. *See id.* USACE then entered price negotiations with all offerors, including Thalle/Nicholson. AR 5813. Thalle/Nicholson submitted its final proposal revision on March 28, 2022. AR 5916-6002.

In its price negotiation memorandum, USACE determined Thalle/Nicholson's evaluated price to be [* * * * * * * *], *see* AR 6121, and Shimmick's evaluated price to be $76,089,805.00, *see* AR 6109. The Source Selection Evaluation Board ("SSEB") subsequently issued a revised SSEB Report on April 27, 2022, containing the following ratings for each offeror:

| W9126G21R0004<br>Offeror | Factor 1<br>Technical Approach | Factor 2<br>Specialized Experience | Factor 3<br>Management Approach | Factor 4<br>Past Performance - Relevancy | Factor 4<br>Past Performance - Confidence | Factor 5<br>Small Business Participation |
|---|---|---|---|---|---|---|
| Kiewit | Good | Acceptable | Good | Relevant | Satisfactory | Good |
| Shimmick | Marginal | Acceptable | Good | Relevant | Satisfactory | Marginal |
| Thalle-Nicholson JV | Outstanding | Good | Outstanding | Relevant | Satisfactory | Acceptable |

AR 6043. The SSEB Report did not identify Thalle/Nicholson's SAM registration status as an issue. *See* AR 6072-85.

USACE called the President of Thalle Construction Co., Inc. on May 6, 2022, to inquire about the SAM registration status of the Thalle/Nicholson Joint Venture. AR 6523. USACE advised that "the government had Thalle registered in SAM . . . and Nicholson was registered in SAM . . . but Thalle Nicholson JV was not" and requested that Thalle/Nicholson "confirm if their Joint Venture was registered in SAM" and "provide that information." *Id.* In response, the President informed USACE that "they were not registered in SAM as a JV (Joint Venture), but if

4

[USACE] could confirm an award to Thalle/Nicholson, they would register as a JV." *Id*. The President further stated that "they did submit a Joint Venture Agreement Legal Document with their solicitation proposal" and that "[t]he legal document was their only confirmation as a JV." *Id*.

On May 11, 2022, in a document titled "After the Fact Competitive Range Determination (Abbreviated)," USACE stated that "all three proposals were considered as the competitive range and no determination was made based on initial findings of the board and pricing to eliminate any contractor from the competitive range." AR 6087-88. USACE also stated:

> Although, the proposal from Thalle/Nicholson JV should have been excluded from further evaluation from receipt of initial proposal due to them not having a CAGE code identifying their joint venture in accordance with FAR 52.204-7. This was not identified until after negotiations had concluded.

AR 6088.[4] That same day, USACE notified Thalle/Nicholson that its proposal was not eligible for award:

> As required by [FAR] 15.503(b), this is notice that Thalle-Nicholson Joint Venture, is not eligible for award due to its failure to comply with FAR 52.204-7(b)(1) ('An Offeror is required to be registered in SAM *when submitting an offer* or quotation and shall continue to be registered until time of award.'). Specifically, Thalle-Nicholson Joint Venture failed to register in SAM prior to submitting its offer.

AR 6303 (emphasis in original). In a Contract Review Board Peer Review dated May 23, 2022, the peer reviewer commented:

> Thalle-Nicholson Joint Venture – indicated in the proposal 52.204-8 and 52.204-7[.] Each member has completed representations and certifications in SAM – does this make a JV? And if so would you need to check both parties SAM . . . [?]

AR 6448. In response, the contracting chief stated:

> Thalle-Nicholson was checked individually in SAM at receipt of proposal. Thalle-Nicholson has confirmed that they are not registered, as a JV as of 6&9 May-22. Shimmick will be awarded the contract and is active in SAM.

*Id*. USACE awarded the contract to Shimmick on May 24, 2022. AR 6378.

---

[4] Contracting officers are required to "verify the offeror's CAGE code by reviewing the entity's registration in the System for Award Management (SAM). Active registrations in SAM have had the associated CAGE codes verified." FAR 4.1803.

5

### C. Procedural History

Thalle/Nicholson filed a bid protest in this Court on July 12, 2022, arguing that USACE failed to conduct meaningful discussions with Thalle/Nicholson by not identifying the lack of SAM registration as a deficiency and providing Thalle/Nicholson an opportunity to address it. Compl. [ECF 1] ¶¶ 45-50. Shimmick intervened in the protest on July 18, 2022. *See* Mot. to Intervene [ECF 10]. Thalle/Nicholson filed a motion for judgment on the administrative record on August 24, 2022. *See* Pl.'s Mot. for J. on the Admin. R. [ECF 36]. In response, on September 7, 2022, the government filed a motion to dismiss for lack of standing pursuant to RCFC 12(b)(1), and, alternatively, a cross motion for judgment on the administrative record. *See* Def.'s Mot. to Dismiss, or alternatively, Cross-Mot. for J. on the Admin. R. [ECF 46]. Shimmick also filed a cross motion for judgment on the administrative record on September 7, 2022. *See* Def.-Intervenor Cross-Mot. for J. on the Admin. R. [ECF 43]. The motions are fully briefed, and the Court held oral argument on September 28, 2022. *See* Scheduling Order [ECF 12].

## II. LEGAL STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Standing pursuant to RCFC 12(b)(1)

A motion to dismiss for lack of standing pursuant to RCFC 12(b)(1) questions whether the court has jurisdiction to adjudicate the merits of the underlying dispute. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); RCFC 12(b)(1). This Court has jurisdiction under the Tucker Act to render judgment on a bid protest action brought "by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process[,]" including objections to an award. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). However, before reaching the merits of a bid protest, the Court must first determine whether the protestor has standing to challenge the agency's award decision. *Orbital Maint. & Constr. Co. v. United States*, 145 Fed. Cl. 71, 74 (2019); *see Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

The standing requirements of § 1491(b)(1) are "more stringent" than the standing requirements imposed by Article III of the United States Constitution. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017). A protestor must make two separate showings: (1) that it is an interested party and (2) that it was prejudiced by a significant error in the procurement process. *Id*. To satisfy the interested party requirement, a protester must show that it is an actual or prospective bidder who possesses the requisite direct economic interest. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). A protestor has a direct economic interest if it shows that it had a substantial chance of winning the contract. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358-59 (Fed. Cir. 2018). For the prejudice requirement, the protestor must establish that, but for the alleged procurement error, the protestor would have had a substantial chance of receiving the contract award. *Diaz*, 853 F.3d at 1358; *see Info. Tech. & Applications v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (highlighting that the

"prejudice issue must be reached before addressing the merits"). "Despite the potential relevance of prejudice in determining substantial chance, direct economic interest should still be evaluated separately from prejudice." *Veteran Shredding, LLC v. United States*, 140 Fed. Cl. 759, 765 (2018) (quoting *CliniComp Int'l*, 904 F.3d at 1358-59); *Universal Marine Co. K.S.C. v. United States*, 120 Fed. Cl. 240, 248 (2015) ("[A] proper standing inquiry must not conflate the requirement of 'direct economic interest' with prejudicial error.") (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009)). The finding of prejudice is a factual determination. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1352 (Fed. Cir. 2005).

### B. Motion for Judgment on the Administrative Record

This Court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard permits a court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum,* 404 F.3d at 1351. "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 559 (2012) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The protestor has the burden to show by a preponderance of evidence the arbitrary and capricious nature of the agency's decision. *Mortg. Contracting Servs., LLC v. United States*, 153 Fed. Cl. 89, 124 (2021). While the APA standard calls for considerable deference to the agency, *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), a court may set aside an agency's procurement decision if the decision lacked a rational basis, or the procurement procedure involved a violation of regulation or procedure. *Impresa*, 238 F.3d at 1332; *see also Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1343 (Fed. Cir. 2021). Nevertheless, if the reviewing court finds that the agency's action evinced rational reasoning and consideration of relevant factors, it must sustain the agency's action. *Advanced Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974)).

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Standing pursuant to RCFC 12(b)(1)

The government argues that Thalle/Nicholson's protest should be dismissed for lack of standing because Thalle/Nicholson's proposal "was incurably deficient and therefore could not have been accepted as a matter of law." [ECF 46] at 17.[5] While the government does not dispute that Thalle/Nicholson is an actual or prospective bidder that has a direct economic interest in the procurement, it argues that Thalle/Nicholson "fails to satisfy the second prong of the standing requirement that it demonstrate 'that it was prejudiced by a significant error in the procurement process, meaning, that, but for the error, it would have had a substantial chance of securing the

---

[5] All page numbers in the parties' briefings refer to the page number generated by the CM/ECF system.

7

contract.'" Def.'s Reply [ECF 50] at 6-7 (quoting *Asset Prot. & Sec. Servs., L.P. v. United States*, 5 F.4th 1361, 1365 (Fed. Cir. 2021)). The government contends that, since Thalle/Nicholson's proposal failed to comply with the requirement in FAR 4.1102[6] that a joint venture be registered in SAM prior to proposal submission, it would have been unlawful for USACE to award the contract to Thalle/Nicholson. [ECF 46] at 17. Since USACE cannot make an unlawful contract award, the government argues that Thalle/Nicholson cannot show that it would have had "a substantial chance of securing the contract[,]" but for the alleged error by USACE. *Id.*

Despite the government's contentions, the Court finds that Thalle/Nicholson has satisfied the prejudice requirement to establish standing. Thalle/Nicholson argues that USACE should have raised the SAM registration requirement during discussions and allowed Thalle/Nicholson an opportunity to address its SAM registration such that its proposal would be eligible for award. *See* [ECF 1] ¶¶ 49-50. If Thalle/Nicholson succeeds with its argument, the record shows that Thalle/Nicholson would have had a substantial chance of securing the contract. *See Impresa*, 238 F.3d at 1334; *Am. Relocation Connections, LLC v. United States*, 789 F. App'x 221, 226 (Fed. Cir. 2019) ("For standing, we presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by the procuring agency's actions."); *G4S Secure Integration LLC v. United States* ("*GS4 II*"), 161 Fed. Cl. 387, 397 (2022) ("although [p]laintiffs were determined by the agency to be ineligible for award . . . , it is precisely that determination that [p]laintiffs challenge in this protest"); *CR/ZWS LLC v. United States*, 138 Fed. Cl. 212, 222-223 (2018). Thalle/Nicholson's proposal was rated higher than the proposals submitted by the other offerors, and its price was only marginally higher than the awardee's. *See* AR 6086; *compare* AR 6121 (Thalle/Nicholson's evaluated price) *with* AR 6586 (Shimmick's awarded price). Additionally, the administrative record suggests that USACE was prepared to award the contract to Thalle/Nicholson until USACE discovered that the Thalle/Nicholson joint venture was not registered in SAM. *See* AR 6447 ("Unsuccessful Letters–state award have [*sic*] been made to Thalle-Nicholson JV[.]"). Thus, the record shows that, but for the alleged procurement errors by USACE that resulted in Thalle/Nicholson's proposal being deemed ineligible for award, Thalle/Nicholson would have had a substantial chance of receiving the contract. *See Tele-Consultants, Inc. v. United States*, 142 Fed. Cl. 686, 694 (2019) (finding that an ineligible offeror possessed standing when it challenged the determination that it was ineligible). Because Thalle/Nicholson has shown that it is an actual bidder with a direct economic interest in the procurement and that it was prejudiced by the alleged procurement errors, Thalle/Nicholson has established that it has standing to bring its bid protest.

### B. Motion for Judgment on the Administrative Record

Thalle/Nicholson argues that its "failure to be registered in SAM at the time it submitted its proposal cannot form the rational basis of USACE's determination that Thalle/Nicholson was ineligible for award." [ECF 36] at 23. Thalle/Nicholson asserts that registration in SAM is a responsibility determination, and that "[a]gencies are not required to make a responsibility determination until the time of award and an offeror is entitled to the opportunity to provide missing responsibility information up until that time." *Id.* Thalle/Nicholson also argues that

---

[6] With limited exceptions not applicable here, FAR 4.1102 requires offerors "to be registered in SAM at the time an offer or quotation is submitted[.]" FAR 4.1102. FAR 52.204-7 was amended in October 2018 to align its SAM registration requirements with the requirements of FAR 4.1102. *See* 83 Fed. Reg. at 48,692.

USACE failed to conduct meaningful discussions by not raising Thalle/Nicholson's SAM registration as a deficiency and allowing Thalle/Nicholson to correct it. *See id*. at 26-29. Lastly Thalle/Nicholson argues that USACE failed to document its award decision. *Id.* at 30.

Thalle/Nicholson's arguments are unpersuasive. The record shows that USACE reasonably determined that Thalle/Nicholson's proposal was ineligible for award because the Thalle/Nicholson joint venture was not registered in SAM at the time of proposal submission, as required by the plain language of FAR 52.204-7. "When the text is unambiguous, the court need only read the plain language of the regulation." *Goodwill Indus. of S. Fla., Inc. vs. United States*, 162 Fed. Cl. 160, 192 (2022). The solicitation incorporated FAR 52.204-7 by reference. *See* AR 172. As noted above, FAR 52.204-7(b)(1) unambiguously requires that an offeror be registered in SAM "when submitting an offer" and that an offeror "continue to be registered until the time of award." This requirement applies to all "Offerors[,]" including joint venture offerors, and it cannot be satisfied using the individual SAM registrations of the joint venture members. *See G4S Secure Integration LLC v. United States* ("*G4S I*"), 2022 WL 211023 at *6-7 (2022) ("in revising FAR 52.204-7 in 2018, the FAR Council specifically considered whether to exempt joint ventures from being registered in SAM at the time they submitted offers to RFPs and rejected this notion.").[7] Here, the solicitation expressly states that offerors are "required to meet all solicitation requirements, including terms and conditions, representations and certifications, and technical requirements . . . [and] [f]ailure to meet a requirement *may result in an offer being ineligible for award*." AR 169 (emphasis added). Thalle/Nicholson concedes that it was not registered in SAM at the time it submitted its proposal on November 3, 2021. AR 6523. Accordingly, because Thalle/Nicholson was not in compliance with the SAM registration requirements in FAR 52.204-7(b)(1), USACE had a rational basis for determining that Thalle/Nicholson's proposal was ineligible for award. *See CGS-ASP Sec., JV, LLC v. United States*, 162 Fed. Cl. 783, 814 (2022).

Further, the Court is not persuaded by Thalle/Nicholson's attempts to avoid application of the SAM registration requirements in FAR 52.204-7(b)(1). According to Thalle/Nicholson, "SAM registration relates to responsibility, not responsiveness[,]" and an offeror's responsibility "is determined, not at proposal opening, but at any time prior to award of the contract based on any information received by the agency up to that time." [ECF 36] at 19-23. However, it is not necessary for the Court to determine whether SAM registration is a matter of responsibility or responsiveness. Based on the plain language of FAR 52.204-7(b)(1), an offeror's compliance with the SAM registration requirements is necessarily determined based on the offeror's SAM registration status at the time of offer submission. *See* 52.204-7(b)(1) ("An Offeror is required to be registered in SAM *when submitting an offer* or quotation…") (emphasis added). If an offeror is not registered in SAM when it submits its offer, a determination that the offeror is non-compliant is unavoidable. Even if the Court were to adopt Thalle/Nicholson's position that SAM registration is a matter of responsibility that may be addressed at any time prior to contract award, the only remedy for non-compliance with the SAM registration requirements of FAR

---

[7] The Court recognizes that the decision in *G4S I* is not binding. However, the Court finds the analysis and conclusions in *G4S I* to be informative. *See Zaccari v. United States*, 142 Fed. Cl. 456, 462 n.6 (2019) ("Decisions of the United States Court of Federal Claims do not bind the court in this matter but may provide persuasive authority.").

52.204-7(b)(1), as it is written, would be for the offeror to provide information that demonstrates it was registered in SAM when it submitted its offer and that it continued to be registered up until the time of award. In the instant case, USACE presented Thalle/Nicholson with such an opportunity, and Thalle/Nicholson was unable to demonstrate that it was registered in SAM as required by FAR 52.204-7(b)(1). *See* AR 6523.

The Court is similarly unpersuaded by Thalle/Nicholson's arguments regarding the government's failure to raise the issue of its SAM registration status during their discussions. Thalle/Nicholson contends that "[w]hen USACE decided to include Thalle/Nicholson in the competitive range, USACE obligated itself to conduct full and meaningful discussions with Thalle/Nicholson" in accordance with FAR 15.306(d)[8] and that USACE failed to do so because it failed to identify Thalle/Nicholson's SAM registration status as a deficiency. [ECF 36] at 28-29. Thalle/Nicholson suggests that "USACE could have allowed Thalle/Nicholson to correct the SAM registration issue during the course of discussions." *Id*. at 29. However, even if the Court were to conclude that USACE was obligated by FAR 15.306(d) to bring Thalle/Nicholson's SAM registration status to its attention during discussions, Thalle/Nicholson still would not be able to demonstrate that it was prejudiced by USACE's failure. *See Precision Asset Mgmt. Corp. v. United States*, 135 Fed. Cl. 342, 355 (2017) ("Although the court has concluded that defendant violated FAR 15.306(d)(3) by failing to engage in meaningful discussions with plaintiff, in order to be actionable, that violation must also have been prejudicial." (citing *Impresa*, 238 F.3d at 1333)). Since Thalle/Nicholson was not registered in SAM when it submitted its proposal and, therefore, did not possess information to demonstrate that it was compliant with the SAM registration requirements in FAR 52.204-7(b)(1), Thalle/Nicholson would not have been able to remedy the non-compliance such that it would be eligible for contract award. *G4S II*, 161 Fed. Cl. at 417-18 (finding no prejudice for misleading discussions when a joint venture failed to meet the requirements of FAR 52.204-7(b)(1) because the joint venture offeror could not rectify the mistake).

Furthermore, if USACE had allowed Thalle/Nicholson to remain in the competition by registering in SAM after it submitted its proposal, this action would have constituted a waiver of the requirement in FAR 52.204-7(b)(1) that an offeror be registered in SAM when submitting an offer. The Court is not aware of any legal basis on which USACE could have waived this requirement. The plain language of FAR 52.204-7(b)(1) does not provide the contracting officer with any discretion to determine at what point an offeror must be registered in SAM. *See* FAR 52.204-7(b)(1) ("An Offeror is required to be registered in SAM when submitting an offer or

---

[8] FAR 15.306(d)(3) states:

> At a minimum, the contracting officer must . . . indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

10

quotation, and shall continue to be registered until time of award, . . ."). As the Court explained in *G4S I*, allowing the contracting officer to waive the requirements of FAR 52.204-7(b)(1) would disregard the 2018 amendment that removed any discretion by the contracting officers to determine the timing of SAM registration and "would allow an agency to waive a FAR provision with mandatory language without pursuing the FAR's mandatory procedures when agencies seek to deviate from the FAR". *See G4S I*, 2022 WL 211023, at *7-*9.[9]

Lastly, the Court rejects Thalle/Nicholson's argument that USACE's award decision was arbitrary, capricious, an abuse of discretion, and contrary to law because USACE failed to document its source selection decision as required by FAR 15.308. [ECF 36] at 30. In Thalle/Nicholson's view, "it is impossible to tell how and when USACE actually determined that Thalle/Nicholson's proposal should be eliminated from the competition and why it did not alert Thalle/Nicholson to the risk, making USACE's decision *per se* arbitrary and capricious." Pl.'s Resp. [ECF 48] at 22. Thalle/Nicholson further contends that "the Court cannot conclude that USACE's actions were reasonable because the record evidence does not support USACE's decision to eliminate Thalle/Nicholson from the competition." *Id*. at 23.

FAR 15.308 requires that "[t]he source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation" and that "[t]he source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs." When reviewing an agency's best-value tradeoff and selection decision, the Court will analyze it "to determine whether it is reasonable and within the agency's discretion." *Distributed Sols., Inc. v. United States*, 106 Fed. Cl. 1, 24 (2012).

Here, the administrative record contains a Source Selection Decision Document dated May 12, 2022.[10] AR 6524. In the document, the SSA states:

> Thalle-Nicholson JV cannot be considered for award because they are not actively registered as a joint venture in the System for Award Maintenance (SAM.gov). In accordance with FAR 52.204-7(b)(1);

---

[9] Thalle/Nicholson argues that FAR 52.215-1 allows USACE to waive the requirement that an offeror be registered in SAM at the time of proposal submission because SAM registration is not a material requirement. *See* [ECF 48] at 9-10. Even if FAR 52.215-1 provided USACE with the authority to waive compliance with the requirements of FAR 52.204-7(b)(1), granting such a waiver would be at the discretion of the contracting officer. *See* FAR 52.215-1 ("The Government *may* waive informalities and minor irregularities in proposals received") (emphasis added). Here, based on the terms of the solicitation and the plain language of FAR 52.204-7(b)(1), the Court finds that USACE had a rational basis to determine that Thalle/Nicholson's proposal was ineligible.

[10] The Administrative Record was filed on August 4, 2022, *see* [ECF 21-30], and Thalle/Nicholson filed its Motion for Judgment on the Administrative Record on August 24, 2022, *see* [ECF 36]. On September 7, 2022, the government filed an Unopposed Motion for Leave to Correct the Administrative Record. *See* Def.'s Mot. to Amend [ECF 45]. In its motion, the government stated that it had "inadvertently omitted" the document that "contains the Source Selection Authority's trade-off analysis and reflects the agency decision-making relating to which offer represents the best value to the government" from the Administrative Record. *Id*. at 1. The Court granted the government's motion on September 8, 2022, *see* Order [ECF 47].

> "an Offeror is required to be registered in SAM when submitting an offer ... and shall continue to be registered until time of award ... resulting from this solicitation." Unfortunately, this was only discovered after evaluation of Thalle-Nicholson JV's proposal.

AR 6581. The SSA proceeds to assess Shimmick's proposal against the solicitation evaluation factors and conduct a trade-off analysis. *See* AR 6581-6584. In the trade-off analysis section, the SSA analyzes Shimmick's proposal against the evaluation factors and, instead of analyzing Kiemet's and Thalle/Nicholson's proposals, restates that these proposals were eliminated from consideration. *See* AR 6582-6584. The SSA then documents his best value determination:

> As the Source Selection Authority, I have determined that the proposal submitted by Shimmick in the amount of $76,089,805.00 provides the best overall value to the U.S. Government. The proposal submitted by Shimmick is not the highest rated proposal for factors I-V, but they are the least costly. They are $9,343.75 less than the revised IGE. Kiewit is outside the 25 percent civil works statutory limit per 33 U.S.C. 624 and Thalle Nicholson JV is not currently registered as a joint venture in SAM per FAR 52.204-7. The proposal submitted by Shimmick is technically acceptable with some risks and their price is considered fair and reasonable. Accordingly, a firm fixed price award will be made to Shimmick.

AR 6586. The SSA explains why Kiewit's and Thalle/Nicholson's proposals were eliminated from consideration and why Shimmick's proposal represents the best value to the government. *See* AR 6585-86. The Court finds that this is sufficient rationale for the source selection decision to meet the requirements of FAR 15.308 and that the rationale is reasonable. *See Blackwater Lodge & Training Ctr., Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009) ("An agency demonstrates proper exercise of discretion so long as it documents its final award decision and includes the rationale for any business judgments and tradeoffs made.").

## IV.   INJUNCTIVE RELIEF

Thalle/Nicholson requests that the Court enter a permanent injunction enjoining performance of the contract award to Shimmick and requiring that the USACE reevaluate the proposals. [ECF 36] at 31-34. When deciding if a permanent injunction is warranted, the Court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Achieving success on the merits "is a necessary element for a permanent injunction." *Dell Fed. Sys. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018). In this case, Thalle/Nicholson has not succeeded on the merits. Therefore, Thalle/Nicholson is not entitled to a permanent injunction.

## V.        CONCLUSION

For the reasons stated above, Thalle/Nicholson's motion for judgment on the administrative record is **DENIED**, the government's motion to dismiss is **DENIED**, and the government's and Shimmick's cross-motions for judgment on the administrative record are **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly.

Concurrent with its cross-motion for judgment on the administrative record, Shimmick filed an unopposed motion to supplement the record with a declaration from a senior vice president of Shimmick. *See* Def.-Intervenor Mot. to Suppl. [ECF 44]. The purpose of the declaration was to demonstrate the hardships that Shimmick would face if the Court were to enjoin contract performance. *Id*. at 5-7. Because the Court denies Thalle/Nicholson's request for injunctive relief, Shimmick's motion to supplement the administrative record is **DENIED AS MOOT**.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on July 18, 2022. [ECF 13]. Accordingly, the Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE** on or before **February 10, 2023**, a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion.

**IT IS SO ORDERED.**

                                                                    s/ Thompson M. Dietz
                                                                    THOMPSON M. DIETZ, Judge